UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL WESCOTT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00072-LEW |
| | ) | |
| MAINE DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants | ) | |

## ORDER ON MOTION TO DISMISS

Michael Wescott, who reached adulthood in 2000 or 2001, alleges he was subjected to cruel and unusual punishment and other constitutional and statutory deprivations while in the custody of the Maine Department of Corrections between 1995 and 2001. He filed this civil action against the Department, department officials responsible for the operation of the Maine Youth Center, and several department employees and others responsible for his day-to-day experience at the Youth Center.

The matter is before the Court on the Corrections Defendants' Motion to Dismiss (ECF No. 21).[1] The Defendants argue that the action should be dismissed summarily based on Maine's six-year statute of limitation. They contend the Court can apply the statute here by simply looking at the allegation in Wescott's complaint and certain matters amenable to judicial notice. For reasons that follow, the Motion is denied.

---

[1] Defendants Martin Magnusson and Mary Ann Saar have joined the Motion. Notice of Joinder in Motion to Dismiss (ECF No. 43).

## Background

The events that inform Michael Wescott's claims transpired between 1995 and 2001. Since that time Wescott has suffered from severe emotional and mental disability stemming from post-traumatic stress disorder, major depression, anxiety, personality disorder, and attention deficit hyperactivity disorder. First Am. Compl. ¶¶ 163, 165 (ECF No. 9). These symptoms have rendered Wescott unemployable and, for an eight-year period following his release, homeless. *Id.* ¶¶ 166, 167. In that time, Wescott lived an itinerant existence in as many as thirty-four states. *Id.* ¶ 167. With the aid of a caseworker, in 2008 Wescott sought, and in 2011 secured, social security benefits. *Id.* ¶ 170. The Social Security Administration pays Wescott's benefits to a family member because it has concluded that Wescott cannot manage his funds. *Id.* ¶ 171.

In 2016, Wescott obtained a learner's driving permit. I take notice of this fact based on a certified copy of Wescott's driver's record (ECF No. 21-2) introduced by Defendants in support of their motion. According to that record, Wescott's license is under indefinite suspension for failure to comply with a Bureau of Motor Vehicles medical evaluation request.

## Discussion

Wescott's First Amended Complaint sets out seven counts (I-VII) under 42 U.S.C. § 1983 (one claim each for seven DOC officials); five counts that apply to a large group of officers and assert claims under § 1983 (VIII & XI), 5 M.R.S. § 4682 (IX & X), and civil conspiracy law (XII); and three counts targeting some or all defendants for violation of the Americans with Disabilities Act (XIII), civil conspiracy in violation of state and federal

civil rights (XIV), and aiding and abetting the violation of state and federal civil rights (XV).

Defendants argue that all of Wescott's claims are now barred based on Maine's six-year statute of limitation, 14 M.R.S. § 752, which would have started running upon Wescott attaining the age of majority and expired sometime in 2006 or 2007. Mot. 5. Wescott does not contest this raw calculation, but contends the statute of limitation was tolled due to his mental illness, *see* 14 M.R.S. § 853, and that a subset of allegations involving sexual abuse of a minor remain actionable under Maine law, pursuant to 14 M.R.S. § 752-C, which states that there is no limitation period on sex offenses against minors. Pl's Opp'n 3-4, 10.

I focus my attention on the statute of limitations that governs Wescott's federal claims, as those claims are the basis for the Court's jurisdiction. The statute of limitations for a § 1983 cause of action is set by the forum state's limitation period on personal injury torts, *Owens v. Okure*, 488 U.S. 235, 236 (1989), and by the state's "coordinate tolling rules," *Bd. of Regents of Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 484 (1980). That means that, in Maine, a § 1983 action is subject to a six-year limitation period. 14 M.R.S. § 752. A similar inquiry applies and results in application of the six-year limiatation statute to Wescott's claim under the Americans with Disability Act. *See Conners v. Maine Med. Ctr.*, 42 F. Supp. 2d 34, 51 (D. Me. 1999). The running of the limitation period can be tolled on various grounds. Here, the essential ground for tolling would be Maine's statutory tolling provision for persons "under disability," 14 M.R.S. § 853. The statute states, in pertinent part: "If a person … is a minor, mentally ill, imprisoned or without the limits of the United States when the cause of action accrues, the action may be brought … after the disability

is removed." *Id.*

By operation of § 853, the statute of limitation applicable to Wescott's claims was tolled, automatically, until his eighteenth birthday. Furthermore, evidently until his release from the Youth Center at the age of 19, in 2001, the limitation period continued to be tolled. Upon his release, the limitation period would have commenced running unless Wescott was at that time and continuing through at least six years prior to the filing date of his complaint (March 11, 2015), mentally ill within the meaning of the statute. To demonstrate a state of mental illness severe enough to toll the limitation period, Wescott must have experienced "an *overall inability* to function in society that prevent[ed him] from protecting [his] legal rights." *Bowden v. Grindle*, 675 A.2d 968, 971 (Me. 1996) (emphasis in original, quoting *McAfee v. Cole*, 637 A.2d 463, 466 (Me.1994)). Whether that level of mental disability was experienced is a question of fact. *Id.*

A motion to dismiss for failure to state a claim challenges the adequacy of a complaint and asks the court to determine whether the facts alleged make it plausible to infer that a defendant is liable to the plaintiff for a given claim. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017). Defendants do not contend that Wescott has failed to state a claim. Instead, Defendants request dismissal of the complaint based on an affirmative defense. To secure a summary dismissal on that basis, without a hearing, the facts that support the defense must be found in the complaint and their dispositive legal import must be clear. *Álvarez-Maurás v. Banco Popular of Puerto Rico*, 919 F.3d 617, 628 (1st Cir. 2019).

Reading the allegations of the amended complaint in the light most favorable to the

4

plaintiff, it cannot be said that it is clear Wescott was not disabled by a mental illness prior to March 11, 2015. Contrary to Defendant's argument, Wescott's intinerant lifestyle is not necessarily evidence of an "ability" to function in society. It could be regarded by a reasonable person, depending on the circumstances in which Wescott lived, as evidence to the contrary. Similarly, although Wescott secured social security benefits, it is plausible that his claim relied on a mental disability. The fact that his benefits are paid to a family member reinforces this inference. Even if the social security benefits were not based on a mental disability, it is entirely plausible that Westcott could have suffered mental illness within the meaning of the tolling statute. This leaves the fact that Wescott obtained a provisional driver's license. However, he did so after March 11, 2015. Assuming that the acquisition of a provisional driver's license is evidence of the mental capacity to function in society, the facts do not make it clear that Wescott had that capacity before March 11, 2015. In short, Defendants fail to demonstrate that Wescott has pled his case out of court by making their affirmative defense clear in his First Amended Complaint. The request for summary dismissal is, therefore, denied.

     Although Defendants are not entitled to the summary dismissal of Wescott's case, the materials demonstrate the need to resolve the issue of Wescott's mental capacity. Summary judgment offers one approach to hearing the issue. Another approach would entail a preliminary evidentiary hearing. Either approach will require discovery. And yet a final approach would be to let a jury decide the issue at trial.

     In *Yerramsetty v. Dunkin' Donuts Ne., Inc.*, No. 2:18-CV-454-DBH, Judge Hornby considered the mental illness tolling issue at summary judgment and, upon denying the

defendant's motion, left the material issues for resolution at trial. *See* 2020 WL 5578409 (D. Me. Sept. 17, 2020). Similarly, in *Morris v. Hunter*, 652 A.2d 80 (Me. 1994), the trial court assessed the issue in the summary judgment context. That approach was not criticized by the Law Court, though the grant of summary judgment was. *See id.* at 82.

In *Melendez-Arroyo v. Cutler-Hammer de P.R. Co.*, 273 F.3d 30 (1st Cir. 2001), the First Circuit reviewed a cross-appeal of a summary judgment order that left for resolution at trial the issue whether there existed a mental-disability basis for tolling a federal statute of limitation. *Id.* at 38. The cross-appeal raised the question whether the denial of summary judgment was a sufficient resolution of the statutue of limitation defense, presenting the argument that the district court should have held a hearing to resolve the statute of limitation issue before trial. The Court found merit in the defendant's position, given that the tolling question arose as an equitable (i.e., non-jury) exception to a federal statute of limitation and given that the facts concerning the plaintiff's alleged mental disability did not overlap with the facts that gave rise to the litigation. *Id.* at 38-39. The Court remanded the matter with instruction to the district court to "hold whatever hearing may be called for and decide the ultimate question whether equitable tolling is appropriate." *Id.* at 39.

Here, the statute of limitation presents a bar to litigation unless a separate statutory exception tolls its running due to the plaintiff's mental illness. It appears likely that the burden of establishing the exception would fall on Wescott, though this is not certain.[2]

---

[2] As Judge Hornby recently observed, the Maine Supreme Judicial Court has not assigned a clear burden-shifting paradigm to govern mental-illness tolling of the statute of limitation. *Yerramsetty v. Dunkin' Donuts Ne., Inc.*, No. 2:18-CV-454-DBH, 2020 WL 5578409, at *1 n.3 (D. Me. Sept. 17, 2020) (denying defendant's motion for summary judgment based on genuine issue of material fact generated by the
*(continued next page)*

Furthermore, because the exception is set forth in Maine law, a jury finding would appear to be the proper means of resolving whether Wescott's mental illness qualifies for tolling, assuming there are genuine issues of material fact that would require an evidentiary hearing.[3] That appears to have been the practical outcome of both the *Morris* opinion and the *Yerramsetty* decision – that the jury would resolve the issue of mental capacity.

The more difficult issue here, however, is whether the schedule of the case should call for early resolution of the mental illness question, before embarking on the much larger endeavor that is the case itself. Defendants advocate a preliminary hearing given that the claims would otherwise "forc[e] more than thirty defendants to litigate twenty-year old claims that are likely barred by the statute of limitations," and evidently they think that I should serve as the fact finder at the hearing. Mot. 14. They observe that statutes of limitation are meant to provide defendants with repose and to protect the legal process from cases "in which the search for truth may be seriously impaired by the loss of evidence." Mot. 15 (quoting *Albert v. Maine Cent. R.R.*, 905 F.2d 541, 543 (1st Cir. 1990), and citing, *inter alia*, *Maine Med. Ctr. v. Cote*, 577 A.2d 1173, 1176 (Me. 1990)). But the First Circuit's view on that once axiomatic rule has become more elastic in the last couple years and that court now appears to require Defendants to wait for a jury to decide the application

---

plaintiff's affidavit). *See also Morris v. Hunter*, 652 A.2d 80, 82 (Me. 1994) (reversing summary judgment grant without delineating burdens).

[3] Wescott cites *Wolinetz v. Berkshire Life Insurance Co.*, 361 F.3d 44, 47 (1st Cir. 2004), for the proposition that he "is entitled to a jury trial on any factual disputes regarding the applicability of Section 853." Pl's Opp'n 9 n.3. In *Wolinetz*, the First Circuit applied Massachusetts law and drew its conclusion based on Massachusetts precedent. 361 F.3d at 48 (citing *Riley v. Presnell*, 565 N.E.2d 780, 787 (1991)). *Wolinetz* is thus persuasive but not binding authority on the issue of having a jury do the fact finding. Wescott has not cited any Maine precedent on the issue.

of the statute of limitations and associated tolling arguments. *Ouellette v.Beaupre*, 977 F.3d 127, 145 (1st Cir. 2020) ("[A] reasonable jury could find that Ouellette had no duty to diligently investigate his claims against appellees prior to 2015 …."). It is difficult to estimate how durable that version of the rule will turn out to be. While we wait with bated breath, the parties to the present litigation deserve an answer in the absence of predictability. Wescott disagrees on the need for a preliminary hearing. Pl's Opp'n 2, 9-10. Wescott evidently would like the case to proceed to discovery on all issues, leaving the matter of tolling for the jury's consideration at trial. This seems consistent with the recent desires of the First Circuit but contrary to other of its expressions on the subject.

There is much in the current record to suggest that a preliminary proceeding to sort out the statute of limitation defense would be appropriate. Some factors that point in that direction are the fact that the tolling test sets a high bar[4] that focuses on the plaintiff's inability to function in society, which in this case focuses on a lengthy period of time after Wescott's release from the Youth Center; the sheer size of the defendant pool, resulting in the denial of repose to a great many individuals; and the expansive nature of the claims, which involve day-to-day events spread out over the several years.[5] Wescott attributes his mental illness to the underlying facts and circumstances that give rise to his legal claims, but there are separate groups of facts here and the overlap does not appear to be so extensive that separating the proceedings would not allow for a decidedly greater focus on the tolling

---

[4] *See Douglas v. York County*, 433 F.3d 143 (1st Cir. 2005) (affirming entry of summary judgment on statute of limitation, denying tolling based on mental illness for female plaintiff raped by male trustee prisoners while in county jail).

[5] By comparison, the claims presented by the *Douglas* plaintiff involved events occurring over four days, a much more adminstrable underyling case. *Id.* at 145.

issue.

In any event, I decline to make a ruling about the future course of proceeding on the current briefs. Defendants tried, but failed, to secure the summary dismissal of Wescott's case, and they advocate a hearing without acknowledging that the tolling issue may well be a jury issue, in light of the First Circuit's evolving view on the subject, without discussing the sort of factors that might guide a decision whether to order preliminary precedings, and without proposing a schedule. Similarly, Wescott's opposition brief gives short shrift to the issue. Deviating from the standard scheduling order under these circumstances strikes me as more slapdash than the product of reason supported by informed advocacy. My refusal to order a preliminary evidentiary hearing is without prejudice. Following entry of the scheduling order in this case, Defendants are free to request modification of the scheduling order on proper motion. *See* D. Me. Loc. R. 16.2(e).

## Conclusion

Defendants' Motion to Dismiss (ECF No. 21) is DENIED.

**SO ORDERED.**

Dated this 4th day of January, 2022.

                                              /s/ Lance E. Walker
                                            UNITED STATES DISTRICT JUDGE